IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAWRENCE JOHNSON,** | : | **Civil No. 1:13-CV-1866** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Conner)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **R. HOLT, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

The plaintiff, Lawrence Johnson, is a federal inmate who was housed at the United States Penitentiary, Canaan in 2011.  Presently, this case comes before the Court for consideration of the legal sufficiency of an amended a *pro se* complaint filed by Johnson.  (Doc. 22.)  This amended complaint is far-reaching and ambitious in its scope.  Indeed, this amended complaint combines a hodgepodge of claims against some 26 individual defendants.

Liberally construed, Johnson's disparate array of contentions includes as many as eight distinct, and disparate, legal claims.  At the outset, Johnson alleges that, upon his arrival at the United States Penitentiary, Canaan, defendants Sample, Gubbiotti,

Kabonic and Bugerhoffer violated his constitutional rights by compelling him to provide a DNA sample to prison officials. (Id.) In addition, Johnson alleges that as many as ten defendants, Warden Holt, Associate Warden Dunbar, Inmate Systems Managers Farley and Trentley, along with Correctional Officers Mazza, Bushinski, Kalogna, Potter, Bond, and Beck, interfered with his legal mail. (Id.) Further, according to Johnson, various named and unnamed defendants have treated him differently than other inmates in ways which are not fully described, but according to Johnson, violate constitutional Equal Protection principles. (Id.) Johnson then alleges that some ten defendants[1] have interfered with his right of access to the courts and retaliated against him for past litigation by refusing to notarize documents for the plaintiff and refusing to provide him access to his legal files when he has been preparing to litigate various claims in other courts. (Id.)

Furthermore, Johnson then levels a series of unrelated claims against a different group of correctional defendants. Thus, Johnson alleges that various defendants have housed him under conditions of confinement which violate the Eighth Amendment to the United States Constitution. In particular, Johnson alleges that prison officials have served spoiled and tainted food items to inmate. Some of these allegations are

---

[1]These defendants appear to include defendants Farley, Bushinski, Beck, Potter, Kalogna, Trentley, Mazza, Thomas, Gubbiotti and Jenski.

2

cast in general terms, and others simply describe isolated instances in which Johnson received, and discarded what he regarded as moldy food.  However, one contention is advanced with great particularity.  Specifically Johnson alleges that two defendants, defendants Durkins and China, deliberately fed inmates spoiled chicken in June 2011, resulting in an outbreak of salmonella food poisoning at the prison in June of 2011.  While Johnson levels this specific Eighth Amendment claim against these two correctional defendants he also seems to try to encompass a broader array of supervisory defendants in this constitutional tort claim based largely upon their supervisory status and their alleged lack of response to his complaints which were lodged by Johnson after the fact.  (Id.)

Johnson then brings Eighth Amendment medical deliberate indifference claims against a number of correctional officials, alleging that in the wake of this June 2011 food poisoning incident his medical complaints were ignored.  While this aspect of Johnson's complaint names a number of prison health care providers as defendants, it also appears to name non-correctional prison staff as defendants, and includes a Public Health Service officer as a defendant in this Bivens constitutional tort claim.

Johnson's multi-faceted complaint has, in turn, inspired a multi-faceted motion to dismiss, or in the alternative for summary judgment, from the defendants.  (Doc.

23.)  This motion challenges all of Johnson's disparate claims on a host of grounds. This motion is fully briefed by the parties, and is, therefore, ripe for resolution.

For the reasons set forth below, it is recommended that the defendants' motion to dismiss or in the alternative for summary judgment, (Doc. 23.), be granted, in part, and denied, in part.  Specifically, we recommend that the following claims be dismissed:  (1) all mail handling claims leveled by Johnson, since Johnson failed to exhaust his administrative remedies with respect to those claims; (2) all Fourth Amendment claims relating to prison officials' actions in taking a DNA sample from Johnson; (3) all Bivens claims against a Public Health Service Officer, defendant Vander Hey Wright; (4) all *respondeat superior* supervisory liability claims; (5) all equal protection claims lodged by Johnson; (6) all Eighth Amendment medical deliberate indifference claims lodged against non-medical correctional staff; and (7) any Eighth Amendment condition of confinement claims relating to prison food service which are brought against defendants as to whom Johnson has not alleged well-pleaded facts describing deliberate indifference to his safety and well-being.

We further recommend that the following claims be permitted to proceed forward at this time:  First, we recommend that the Court deny the motion to dismiss Johnson's access to courts and retaliation claims, since there are disputed factual issues which need to be further developed before these claims could be resolved.

Second, it is recommended that the Court also deny the motion to dismiss Johnson's medical deliberate indifference claim against the following Bureau of Prisons medical staff defendants, defendants Sullivan, Tuttle, Buggerhoff, and Kabonic.   Third, Johnson's Eighth Amendment claims against prison food service staff should be denied with respect to defendants Durkins and China, but granted as to remaining corrections defendants, without prejudice to Johnson endeavoring to file an amended complaint which clearly articulates facts linking these defendants to the knowing service of tainted food to inmates.

Finally, if these recommendations are adopted, we also note that the remaining claims in this litigation involve disparate acts by different defendants which are not legally, logically, topically or temporally related to one another.   Therefore, these disparate claims, which are improperly joined in a single lawsuit should be dismissed without prejudice but with instructions that Johnson should bring these separate claims as separate lawsuits rather than aggregating these unrelated claims together in a single lawsuit.

## II.  Discussion

### A.  Standard of Review-Motion to Dismiss, or in the Alternative, Summary Judgment

The defendants have framed this motion as one seeking dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56.  When a party moves to dismiss, but where "matters outside the pleadings are presented to and not excluded by the court, the motions shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(d).  Typically, when a court converts a motion to dismiss into a motion for summary judgment under Rule 56, notice must be given to all parties of the court's intent to do so.  Id.; Garcia v. Newtown Twp., No. 09-CV-3809, 2010 U.S. Dist. LEXIS 20380, 2010 WL 785808, at *3 (E.D. Pa. March 5, 2010).  However, if a motion to dismiss has been filed with an alternative request for summary judgment, the Court of Appeals of the Third Circuit has found that the alternative filing is sufficient to "place the parties on notice that summary judgment might be entered." Latham v. United States, 306 F. App'x 716, 718 (3d Cir. 2009) (citing Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996)).

6

At the outset, a number of the defendants' claims attack the legal sufficiency of the allegations made by Johnson in this amended complaint.  To the extent that this motion makes a facial attack upon the sufficiency of the complaint, we will treat the motion as a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years.  Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>,

20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."  Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  Rather, in conducting a

8

review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to  show that the plaintiff has a 'plausible claim for relief.'  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In other instances, the defendants invite us to consider matters outside the pleadings when ruling upon this motion. To the extent that we are asked to consider uncontested facts beyond the pleadings we will treat this motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P., Rule 56. Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law

identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence

supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995). Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate. See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d Cir. 2007)(citation

omitted).  Thus, "[w]hen a motion for summary judgment is made and supported ...,
an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co.
Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books,
Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)."  [A] mere denial is
insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the
veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411
F.2d 455, 458 (3d Cir. 1969).  Furthermore, "a party resisting a [Rule 56] motion
cannot expect to rely merely upon bare assertions, conclusory allegations or
suspicions."  Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v.
Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also
comply with Local Rule 56.1, which specifically directs a party opposing a motion
for summary judgment to submit a "statement of the material facts, responding to the
numbered paragraphs set forth in the statement required [to be filed by the movant],
as to which it is contended that there exists a genuine issue to be tried"; if the
nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be
served by the moving party will be deemed to be admitted." L.R. 56.1.  Under the
Local Rules, the failure to follow these instructions  and appropriately challenge the

material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

<u>Doe v. Winter</u>, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis). A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. <u>See</u> <u>Sanders v. Beard</u>, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); <u>Thomas v. Norris</u>, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

Judged against these legal guideposts we find at this early stage in the litigation that a number of Johnson's claims fail as a matter of law.  These claims are discussed separately below.

### B.    A Number of Johnson's Claims Fail as a Matter of Law

### 1.    Johnson Has Failed to Exhaust His Mail Processing Claims

At the outset, Johnson has leveled a series of claims against ten defendants–Warden Holt, Associate Warden Dunbar, Inmate Systems Managers Farley and Trentley, along with Correctional Officers Mazza, Bushinski, Kalogna, Potter, Bond, and Beck– alleging that these defendants improperly handled Johnson's legal mail.  (Doc. 22, ¶¶33-37, and 94-100.)  However, with respect to these mail processing claims, Johnson's complaint runs afoul of an immutable obstacle.  It is undisputed that Johnson never exhausted his administrative remedies within the prison system with respect to this particular complaint.

Johnson's failure to fully grieve this matter now has substantive significance for the plaintiff since the Prison Litigation Reform Act, 42 U.S.C. § 1997 ("PLRA") requires that prisoners present their claims through an administrative grievance process prior to seeking redress in federal court.  Specifically, the Act provides that:

> No action shall be brought with respect to prison conditions under [§ 1983], or any other federal law, by a

> prisoner confined in any jail, prison, or other correctional
> facility until such administrative remedies as are available
> are exhausted.

42 U.S.C. § 1997e(a). In accordance with the PLRA, prisoners must comply with exhaustion requirements with respect to any claim that arises in the prison setting, regardless of the type of claim asserted, or the relief sought. See Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").

As the statute's language makes clear, the exhaustion of available administrative remedies prior to filing suit is mandatory. See Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court – or any other – to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.") (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)). Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. See Small v.

Camden County, 728 F.3d 265 (3d Cir. 2013); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010).

Moreover, the exhaustion requirement of the PLRA is one of "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 84 (2006). Failure to comply with the procedural requirements of the available grievance system will result in a claim being deemed procedurally defaulted. Id. at 90; Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004). An inmate cannot circumvent the PLRA's exhaustion requirement by failing to properly exhaust the prison's administrative review process, or by waiting until such remedies are no longer available to him. Woodford, 548 U.S. at 95. However, if an inmate shows that the actions of prison officials directly caused the inmate's procedural default of a grievance, the inmate will not be held to strict compliance with the exhaustion requirement. Brown v. Croak, 312 F.3d 109, 112-13. Likewise, "[w]here [the inmate] failed to receive even a response to the grievances addressing the . . . incidents, much less a decision as to those grievances, the [administrative remedy] process was unavailable to him." Small v. Camden County, 728 F.3d 265, 271 (3d Cir. 2013).

Proper exhaustion of a grievance means that a prisoner must refrain both from acting too soon or waiting until it is too late to act. Thus, "[a]n 'untimely or otherwise procedurally defective administrative grievance or appeal' does not satisfy

the mandatory exhaustion requirement of the PLRA. Woodford v. Ngo, 548 U.S. 81, 83, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); see also Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir.2004)." Barrick v. Prison Health Sys./Med., 335 F. App'x 153, 155 (3d Cir. 2009). Similarly, the procedural default component of the PLRA's proper exhaustion requirement does not permit "the filing of a suit before administrative exhaustion, however late, has been completed." Ahmed v. Dragovich, 297 F.3d 201, 209 (3d Cir. 2002) citing Perez v. Wis. Dep't of Corr., 182 F.3d 532, 534–35 (7th Cir.1999) (observing "Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to *suit*"); Neal v. Goord, 267 F.3d 116, 122 (2d Cir.2001) (holding that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after filing her complaint in federal court). Accord Jackson v. District of Columbia, 254 F.3d 262, 269 (D.C.Cir.2001); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir.1999); Alexander v. Hawk, 159 F.3d 1321, 1328 (11th Cir.1998); Garrett v. Hawk, 127 F.3d 1263, 1265 (10th Cir.1997).

Here we find that Johnson has not fully exhausted his grievances within the prison system with respect to these mail processing claims. Therefore, this undisputed failure to exhaust his administrative remedies now bars Johnson from pursuing these matters in federal court.

18

## 2.     Johnson's Fourth Amendment Claims Also Fail

In his complaint Johnson also alleges that, upon his arrival at the United States Penitentiary, Canaan, defendants Sample, Gubbiotti, Kabonic and Bugerhoffer violated his constitutional rights by compelling him to provide a DNA sample to prison officials.

This claim also warrants only brief consideration.   Far from being an unconstitutional intrusion into Johnson's civil rights, the practice of collecting DNA samples is mandated by statute.   42 U.S.C. § 14135a.   That statute requires the Director of the Bureau of Prisons to collect a DNA sample from each individual in the custody of the Bureau of Prisons who is, or has been, convicted of a qualifying federal or military offense.   See 42 U.S.C. § 14135a (a)(1)(B).   Moreover, courts uniformly agree that this practice is a minimal and reasonable intrusion on inmate privacy, which occurs in a setting where those privacy expectations are reduced and is justified by important law enforcement necessities.   Accordingly, courts are in agreement that this practice does not offend the Fourth Amendment. See e.g., United States v. Mitchell, 652 F.3d 387 (3d Cir. 2011); Hamilton v. Brown, 630 F.3d 889, 891 (9th Cir. 2011); Boroian v. Mueller, 616 F.3d 60 (1st Cir. 2010); Padgett v. Donald, 401 F.3d 1273 (11th Cir. 2005); Johnson v. Quander, 440 F.3d 489, 492 (D.C. Cir. 2006); Johnson v. Ogershok, 134 F. App'x 535 (3d Cir. 2005); Green v.

Berge, 354 F.3d 675, 677 (7th Cir. 2004); Groceman v. U.S. Dep't of Justice, 354

F.3d 411, 413 (5th Cir. 2004); Roe v. Marcotte, 193 F.3d 72 (2d Cir. 1999); Boling

v. Romer, 101 F.3d 1336, 1339 (10th Cir. 1996); Jones v. Murray, 962 F.2d 302, 304

(4th Cir. 1992).   Therefore, given this case law which consistently rejects

constitutional claims like those made here by Johnson, this Fourth Amendment claim

also fails as a matter of law and should be dismissed.

### 3.   The Claims Against Defendant Vander Hey Wright, a Public Health Service Officer, Must be Dismissed

We further note that Johnson's claims against defendant Vander Hey Wright

are also subject to dismissal at this time.   It is represented, and undisputed, that

defendant Vander Hey Wright is an officer of the Public Health Service, who was

assigned to the United States Penitentiary, Canaan at the time of the events set forth

in Johnson's complaint.

This fact is fatal to Johnson's Bivens claims against this defendant since, as a

public health service officer, Vander Hey Wright is immune from personal liability

here pursuant to 42 U.S.C. § 233(a), which provides that the Federal Tort Claims Act

is the exclusive avenue for relief for claims arising out of public health service

employee conduct.  As the United States Supreme Court has observed: "the immunity

provided by § 233(a) precludes Bivens actions against individual PHS officers or

employees for harms arising out of conduct described in that section."   Hui v.

Castaneda, 559 U.S. 799, 130 S.Ct. 1845, 1854, 176 L.Ed.2d 703 (2010).  See

Richards v. Pigos, No. 1:13 CV 403, 2013 WL 3836253, at *16 (M.D. Pa. July 18,

2013).  Therefore, defendant Vander Hey Wright is statutorily immune from Bivens

constitutional tort liability in this case and should be dismissed from this action.

### 4.    Johnson's Equal Protection Claim Fails

Johnson also advances an Equal Protection claim, albeit in a nascent and

largely unarticulated fashion, by simply alleging that he has been denied equal

protection of the law.  (Doc. 22.)  Such a summary allegation cannot survive as a

constitutional claim, however.  The Equal Protection Clause requires that all people

similarly situated be treated alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S.

432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).  "[T]he purpose of the equal

protection clause of the Fourteenth Amendment is to secure every person within the

State's jurisdiction against intentional and arbitrary discrimination, whether

occasioned by express terms of a statute or by its improper execution through duly

constituted agents ." Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct.

1073, 145 L.Ed.2d 1060 (2000) (quotations omitted).  Claims for equal protection

violations are subject to differing levels of scrutiny depending on the status of the

claimant.  Statutes or actions that substantially burden a fundamental right or target

a suspect class must be reviewed under "strict scrutiny," which means that in order

to be valid, they must be narrowly tailored to serve a compelling governmental interest. Plyler v. Doe, 457 U.S. 202, 216–17, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); Abdul–Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir.2000). In contrast, if a statute or government action neither burdens a fundamental right nor targets a suspect class, it does not violate the Fourteenth Amendment's Equal Protection clause, so long as the state action bears a rational relationship to some legitimate end. Romer v. Evans, 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996); Abdul–Akbar, 239 F.3d at 317.

It is also well settled that prisoners do not constitute a suspect class for Fourteenth Amendment purposes. Therefore, absent some further well-pleaded facts, Johnson's largely unexplained equal protection claim is governed by rational-basis review. See Myrie v. Comm'r, N.J. Dep't of Corr., 267 F.3d 251, 263 (3d Cir.2001); Abdul–Akbar, 239 F.3d at 317. Accordingly, to sustain his Equal Protection claim, Johnson bears the burden of showing that he has been arbitrarily treated differently from similarly situated inmates, that the defendants did so intentionally, and that this difference in treatment bears no rational relation to any legitimate penological interest. See Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir.2006). At this pleading stage of the litigation, Johnson simply has not alleged sufficient well-pleaded facts to sustain this substantial burden. Therefore, in the absence of further

well-pleaded facts, this claim also fails as a matter of law.  See McKeithan v.

Kerestes, No. 1:11-CV-1441, 2014 WL 3734569, at *9-10 (M.D. Pa. July 28, 2014).

>
> **5.** **Johnson May Not Sue Supervisory Officials Based Solely Upon Their Supervisory Status or Their Processing of His Past Grievances**

Further, in many instances Johnson sues prison supervisors, but it is completely

unclear as to the basis of the claims against these supervisory defendants, and

frequently suggests he seeks to hold these officials personally liable simply because

they oversaw prison operations or failed in Johnson's view to adequately respond to

his past grievance.

This he may not do.  Neither of these types of claims are sufficient to hold

prison supervisors personally accountable for alleged constitutional torts.  Quite the

contrary, it is clear that a claim of a constitutional deprivation cannot be premised

merely on the fact that the named defendants were prison supervisors when the

incidents set forth in the complaint occurred.  Instead, to state a constitutional tort

claim the plaintiff must show that the supervisory defendants actively deprived him

of a right secured by the Constitution.  Morse v. Lower Merion School Dist., 132 F.3d

902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980).  Constitutional

tort liability is personal in nature and can only follow personal involvement in the

alleged wrongful conduct shown through specific allegations of personal direction

or of actual knowledge and acquiescence in the challenged practice. Robinson v. City

of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

> In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have
> personal involvement in the alleged wrongdoing; liability cannot be
> predicated solely on the operation of respondeat superior.   Personal
> involvement can be shown through allegations of personal direction or
> of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d
> 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

> As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional
> conduct of their subordinates under a theory of respondeat superior. . .
> . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658,
> 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability
> for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v.
> Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's
> liability "will only result from his own neglect in not properly
> superintending the discharge" of his subordinates' duties); Robertson v.
> Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A
> public officer or agent is not responsible for the misfeasances or position
> wrongs, or for the nonfeasances, or negligences, or omissions of duty,
> of the subagents or servants or other persons properly employed by or
> under him, in the discharge of his official duties").  Because vicarious
> liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead
> that each Government-official defendant, through the official's own
> individual actions, has violated the Constitution.

Ashcroft v. Iqbal,  556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006).

Here, to the extent that Johnson simply names a supervisory official in the caption of the case, and then seek to hold that official personally liable based upon the official's supervisory status without making any specific factual allegations about these defendants in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of these defendants. Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)

Nor can Johnson sustain a supervisory liability claim against these officials by simply alleging in a talismanic fashion that they failed to train, oversee or supervise their subordinate employees. In this regard, we note that: " 'Numerous courts,

including this one, have expressed uncertainty as to the viability and scope of supervisory liability after Iqbal.' Santiago, 629 F.3d at 130 n. 8 (collecting cases); see also Argueta, 643 F.3d at 70." Bistrian v. Levi, 696 F.3d 352, 366 n. 5 (3d Cir. 2012). To the extent that supervisory liability survives after Iqbal, the scope of that liability is clearly and narrowly defined. As the United States Court of Appeals for the Third Circuit has observed: "'[t]here are two theories of supervisory liability' one under which supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm,' and another under which they can be liable if they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.' A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir.2004) (second alteration in original)." Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010).

Therefore, it is incumbent upon Johnson to plead, and then prove, facts showing that "the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.' A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir.2004) (second alteration in original)." Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010). In the alternative Johnson must allege facts which support a claim of supervisory liability here grounded upon an

26

assertion that the defendants "established and maintained a policy, practice or custom which directly caused [a] constitutional harm," <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 129 (3d Cir. 2010). Since Johnson has not consistently alleged direct supervisory involvement or approval in wrongdoing or identified any unconstitutional policy which led to the various injuries which he alleges that he has suffered, these supervisory liability claims fail, as pleaded.

Furthermore, to the extent that Johnson's supervisory liability claims rest on the premise that officials did not after-the-fact act favorably upon his past grievances, these claims also fail. An inmate cannot sustain a constitutional tort claim against prison supervisors based solely upon assertions that officials failed to adequately investigate or respond to his past grievances. Inmates do not have a constitutional right to a prison grievance system. <u>Speight v. Sims</u>, 283 F. App'x 880 (3d Cir. 2008) (<u>citing Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. <u>See also</u> <u>Alexander v. Gennarini</u>, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); <u>Pryor-El v. Kelly</u>, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison

inmates, the prison officials' failure to comply with grievance procedure is not actionable).  See also  Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern.").  As the United States Court of Appeals for the Third Circuit observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system.  The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior ); see also  Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

Indeed, as to such claims, the United States Court of Appeals for the Third Circuit has recently held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances.  See Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir.1973)."  Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011).  Therefore, any supervisory liability claims premised upon the processing of Johnson's past grievances also fail as a matter of law.

Finally, we note that Johnson has named one supervisory defendant, Executive Assistant Straesser, but simply alleges that defendant Straesser made statements to the news media which understated the extent of the June 2011 salmonella outbreak at U.S.P. Canaan.  To the extent that Johnson's claims against this defendant arise solely out of his perception that the defendant's reported press statements were incomplete, we believe that Johnson has not stated a claim for violation of his individual constitutional rights, and defendant Straesser should be dismissed from this action.

**6.     The Motion to Dismiss Johnson's Eighth Amendment Claims Should be Granted, in Part, and Denied, in Part**

In addition, Johnson's amended complaint appears to lodge two distinct Eighth Amendment claims against a broad array of defendants.  First, Johnson alleges that various defendants have housed him under conditions of confinement which violate the Eighth Amendment to the United States Constitution.  In particular, Johnson alleges that prison officials have fed him spoiled and tainted food items, and specifically alleges that two defendants, defendants Durkins and China, deliberately fed inmates spoiled chicken in June 2011, resulting in an outbreak of salmonella food poisoning at the prison in June of 2011.  While Johnson levels this specific Eighth Amendment claim against these two correctional defendants he also seems to try to encompass a broader array of supervisory defendants in this constitutional tort claim

29

based largely upon their supervisory status and their alleged lack of response to complaints which were lodged by Johnson after the fact.  (Id.)

Johnson then brings Eighth Amendment medical deliberate indifference claims against a number of correctional officials, alleging that in the wake of this June 2011 food poisoning incident his medical complaints were ignored.  While this aspect of Johnson's complaint names prison health care providers as defendants, it also appears to name non-correctional prison staff as defendants, and includes a Public Health Service officer as a defendant in this Bivens constitutional tort claim.

In conducting a legal analysis of these claims we are mindful of the constitutional principles which govern Eighth Amendment claims, principles which set precise and exacting standards for asserting a constitutional infraction.  All of the various claims are governed by the same overarching and animating constitutional benchmarks, benchmarks which require allegations and proof of both serious deprivations and intentional wrongdoing.  As the United States Court of Appeals for the Third Circuit has observed:  "Resolution of an Eighth Amendment claim . . . 'mandate[s] an inquiry into a prison official's state of mind.'  Wilson v. Seiter, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  Two considerations define that inquiry.  We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections.  Id. at 298, 111 S.Ct. 2321.  If not, our inquiry is at an end.  However, if the deprivation is sufficiently serious, we

must determine if the officials acted with a sufficiently culpable state of mind.  Id.

In other words, we must determine if they were motivated by a desire to inflict

unnecessary and wanton pain.  'What is necessary to establish an "unnecessary and

wanton infliction of pain ..." varies according to the nature of the alleged

constitutional violation.'  Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117

L.Ed.2d 156 (1992)."  Fuentes v. Wagner, 206 F.3d 335, 344-45 (3d Cir. 2000).

> ### a.  The Motion to Dismiss Johnson's Eighth Amendment Medical Deliberate Neglect Claims Should be Denied, in Part, and Granted, in Part

These guiding legal tenets specifically apply to the Eighth Amendment claims

made by Johnson in this case.  At the outset, with respect to issues of medical care,

it is well-settled that prison officials may also violate an inmate's rights under the

Eighth Amendment to the United States Constitution by displaying "deliberate

indifference" to this inmate's medical needs.  To sustain such a claim, an inmate must

plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted).  In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id.  "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel,256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care.  In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  To establish a violation of his constitutional right to adequate medical care in accordance with this standard, an inmate is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104.  Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation.

Estelle, 429 U.S. at 106.  "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners."  Durmer, 991 F.2d at 67 (citations omitted).  Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate.  Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").  Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference.  See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')".  Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services.

There is a necessary corollary to this principle, limiting the reach of the Eighth Amendment in a prison medical setting.  In a case such as this, where the plaintiff's

complaint reflects that an inmate received some level of medical care, it is also well-established that non-medical correctional staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d. Cir. 1993). The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit in the following terms:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference

Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004)

Applying this standard, courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to medical staff may not be held personally

liable for medically-based Eighth Amendment claims. See, e.g., Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006); Spruill v. Gillis, supra; Durmer v. O'Connor, supra.

Judged against these benchmarks, we find that Johnson has adequately alleged an Eighth Amendment medical deliberate indifference claim against defendants Sullivan, Tuttle, Buggerhoff, and Kabonic, all of whom are prison health care providers. Fairly construed, Johnson's amended complaint alleges that these prison health care providers contacted him but refused to adequately treat him for a two week period as he experienced salmonella food poisoning. Doc. 22, ¶¶60-65.) These allegations suffice to state an Eighth Amendment claim at this stage where we are largely confined to an assessment of the well-pleaded facts in the complaint. Whether the undisputed facts ultimately support this claim is a question that must await another day, and a more fully-documented motion for summary judgment addressing this particular claim.

However, these well-pleaded facts also reveal that Johnson was being seen by prison medical staff following this outbreak of salmonella food poisoning at the prison. Since Johnson was being seen and cared for by medical personnel, albeit in a fashion which the plaintiff alleges was insufficient, non-medical correctional staff may not be held personally liable under the Eighth Amendment for the nature and level of care which the plaintiff received. See, e.g., Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006); Spruill v. Gillis, supra; Durmer v. O'Connor, supra. Therefore,

to the extent that Johnson is endeavoring to bring Eighth Amendment medical deliberate indifference claims against non-medical correctional staff those claims should be dismissed.

>   **b.     The Motion to Dismiss Johnson's Eighth Amendment Conditions of Confinement Claims Should be Denied, in Part, and Granted, in Part**

Likewise, the same guiding principles apply to inmate complaints regarding their conditions of confinement.  "When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with 'deliberate indifference' to the inmate's health.   Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  The objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.'  Hudson, 503 U.S. at 9, 112 S.Ct. 995."  Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000).  In this setting, it is clear that:

>   The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society."  Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)).   Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities."  Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003).

Thus, these claims also require proof of a both culpable state of mind, and objective proof of physical conditions of confinement which shock the conscious and depart from minimal civilized standards of life's necessities.  Applying these exacting standards, courts have frequently rebuffed inmate complaints relating to the packaging and presentation of meals.  Thus, "while prisoners are guaranteed a nutritionally adequate diet under the Eighth Amendment, see Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir.1980), there is no constitutional right to hot meals.  See Brown-El v. Delo, 969 F.2d 644, 648 (8th Cir.1992) (finding frivolous prisoner's claim that his constitutional rights were violated when he was served cold food)." Laufgas v. Speziale, 263 F.App'x. 192, 198 (3d Cir. 2008).  Similarly, the "purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation.  See Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir.1983) (only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim)."  Lindsey v. O'Connor, 327 F.App'x. 319, 321 (3d Cir. 2009).

Similarly as defendants aptly note, it is well-settled that a single incident of *unintended* food poisoning does not constitute an unconstitutional condition of confinement in violation of the Eighth Amendment violation.  See, e.g., Green v. Atkinson, 623 F.3d 278, 281 (5th Cir. 2010) ("A single incident of food poisoning or finding a foreign object in food does not constitute a violation of the constitutional rights of the prisoner affected."); Murray v. Allen, No. 10-1014, 2010 WL 4159261,

at *2 (E.D. Pa. Oct.21, 2010) (holding prisoner's allegations regarding a single incident in which he was served a burrito containing a tooth, although "stomach churning," did not rise to the level of an Eighth Amendment violation); Allen v. Maryland, No. L-10-353, 2010 WL 727753, at *1 (D. Md. Feb.25, 2010) ("To state a constitutional violation for unsanitary food preparation an inmate must do more than allege a single or isolated incident of contamination.") Smith-Bey v. CCA/CTF, 703 F. Supp.2d 1, 8 (D.D.C.2010) (holding "two instances of discovering cockroaches in one's food do not rise to the level of a sufficiently serious deprivation" for Eighth Amendment purposes).

Thus, with respect to inmate nutrition Eighth Amendment claims, case law draws a distinction between isolated inadvertent acts and intentional conduct. Only the latter, intentional conduct, constitutes deliberate indifference. Applying this distinction, in this case Johnson has adequately alleged an Eighth Amendment violation against defendants Durkins and China since Johnson's complaint, fairly construed, alleges that these officials deliberately provided salmonella tainted chicken to inmates in June 2011. However, to the extent that Johnson wishes to cast the web of civil liability more broadly with respect to this particular Eighth Amendment claim, he has not sufficiently alleged that other prison staff knowingly participated in the provision of tainted foodstuffs to prisoners. Instead, he has simply described isolated instances in which he received, but did not consume, items that were

unappealing, or that he suspected were spoiled.  However, the recitation of these isolated instances, without more, will not sustain Eighth Amendment claims against additional individual defendants since "[r]esolution of an Eighth Amendment claim . . . 'mandate[s] an inquiry into a prison official's state of mind.' <u>Wilson v. Seiter</u>, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)" <u>Fuentes v. Wagner</u>, 206 F.3d 335, 344-45 (3d Cir. 2000), and requires a showing of a deliberate indifference to inmate safety by each individual defendant, a showing which is not made by Johnson in his amended complaint.

In sum, with respect to these conditions of confinement claims relating to service of allegedly tainted foods, the only claim by Johnson which is pleaded with sufficient specificity is his allegation that defendants Durkins and China intentionally provided salmonella-infected chicken to inmates in June 2011.  While this claim should proceed forward,  any other Eighth Amendment condition of confinement claims should be dismissed.

### C.   <u>Johnson's Retaliation and Access-to-Courts Claims Should Be Permitted to Proceed Forward</u>

Finally, Johnson alleges that some ten defendants[2] have interfered with his right of access to the courts and retaliated against him for past litigation by refusing

---

[2]These defendants appear to include defendants Farley, Bushinski, Beck, Potter, Kalogna, Trentley, Mazza, Thomas, Gubbiotti and Jenski.

to notarize documents for the plaintiff and refusing to provide him access to his legal files when he has been preparing to litigate various claims in other courts.  (Id.) Johnson faces an exacting burden in advancing these claims.

For example, while the United States Supreme Court has long recognized that inmates have a constitutional right of access to the courts, Bounds v. Smith, 430 U.S. 817 (1977), this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law. Id. at 827 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.")  The Supreme Court has provided further definition and guidance regarding the scope and nature of this right of access to the courts in Lewis v. Carey, 518 U.S. 343 (1996). In Lewis, the Court eschewed efforts to define this right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims.  As the Court observed:

> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . .  legal assistance program is subpar in some theoretical sense. . . .  Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," id., at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and

demonstrate that the alleged shortcomings in the  . . . legal assistance program hindered his efforts to pursue a legal claim. . . . . Although <u>Bounds</u> itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which <u>Bounds</u> relied, <u>see id.</u>, at 821-825, 97 S.Ct., at 1494-1497.  Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts.  <u>Id.</u>, at 832, 97 S.Ct., at 1500.

<u>Lewis v. Casey</u>, 518 U.S. 343, 351-52 (1996).

Following <u>Lewis,</u> courts have consistently recognized that such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some other legal claim.  <u>See, e.g.</u>, <u>Oliver v. Fauver</u>, 118 F.3d 175 (3d Cir. 1997); <u>Demeter v. Buskirk</u>, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); <u>Castro v. Chesney</u>, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998). A necessary corollary to this principle is that, in order to prevail on an access to the courts claim, a "plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim." <u>Christopher v. Harbury</u>, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). Thus:

Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an "actual injury"-that they lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit. <u>See Christopher v. Harbury</u>, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002).

> To that end, prisoners must satisfy certain pleading requirements:  The complaint must describe the underlying arguable claim well enough to show that it is "more than mere hope," and it must describe the "lost remedy."  See id. at 416–17, 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413.

Monroe v. Beard, 536 F.3d 198, 205–06 (3d Cir.2008).  See Diaz v. Fed. Bureau of Prisons, No. 1:12CV 1810, 2013 WL 1246793, at *4 (M.D. Pa. Mar. 7, 2013) report and recommendation adopted, appeal dismissed (June 7, 2013) No. 1:12CV1810, 2013 WL 1246771 (M.D. Pa. Mar. 26, 2013).

While this is plainly an exacting standard, when we consider the well-pleaded facts in Johnson's complaint and confine ourselves to these pleadings, we find that Johnson's claims, as pleaded, state a claim upon which relief may be granted.  In particular, Johnson contends that he was deliberately denied access to legal materials in connection with a civil case he was trying in Virginia.  (Doc. 22, ¶¶44-45.)  The fact that Johnson alleges in his complaint that this underlying case was proceeding to trial strongly suggests that: "[t]he complaint . . .  describe[s] the underlying arguable claim well enough to show that it [wa]s 'more than mere hope.'"  Monroe v. Beard, 536 F.3d 198, 205–06 (3d Cir. 2008).  Therefore, these well-pleaded facts state a claim which survives a threshold motion to dismiss.

Likewise, Johnson's retaliation claim is judged against precise legal standards, but may not be dismissed at this time on the pleadings.  A prisoner claiming that

42

prison officials have retaliated against him for exercising his constitutional rights must first prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002). With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). Examples of adverse actions that have, in certain cases, been found to support a retaliation claim include filing false misconduct reports, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), transferring a prisoner to another prison, Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001), and placing a prisoner in administrative custody, Allah, 229 F.3d at 225.

The third essential element to a retaliation claim is that there be a causal link between the exercise of a constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34. To establish this third, and crucial, component to a constitutional retaliation claim, causation, an inmate must make an exacting showing. In this setting:

> To establish the requisite causal connection a plaintiff usually must
> prove either (1) an unusually suggestive temporal proximity between the

protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.  See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir.1997).  In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir.2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

While this is a precise and multi-faceted burden of proof which Johnson must satisfy to prevail upon this claim, we find as a threshold matter that Johnson's retaliation claim, as pleaded, is sufficient to state a claim.  In particular, we note that this retaliation claim rests on an allegation of direct and explicitly retaliatory conduct, with Johnson asserting that defendants Gubbiotti and Jenski denied him legal services, notary services, ostensibly "because Plaintiff was filing complaints against officer's [sic]." (Doc. 22, ¶55.)  This allegation, while perhaps spare, would be sufficient to meet the elements of a retaliation claim, and the issue of whether the undisputed facts will support what Johnson has alleged must await another day, and a more fully documented summary judgment motion.[3]

---

[3]The defendants have also suggested that they are entitled to judgment in their favor on these Eighth Amendment, access-to-court, and retaliation claims as a matter of law on qualified immunity grounds.  The difficulty with this proposition is that all of these remaining claims entail some assessment of the subjective motivation of the defendants, and at this stage of the litigation, where we are largely confined to the pleadings themselves, discovery has not revealed what the evidence shows regarding whether there are genuine disputes regarding the

**D.**   **Johnson's Remaining Claims Are Not Properly Joined in a Single Complaint and the Current Misjoined Complaint Should be Dismissed Without Prejudice to the Filing of These Separate Claims in Distinct Complaints**

While we conclude that several of Johnson's retaliation, access-to-courts, and Eighth Amendment claims survive, we note that an examination of these remaining claims also reveals that they involve allegations of distinct acts committed by disparate parties at widely different times and places.  Thus, there is no single, coherent legal, logical, topical or temporal connection between these various claims.

Without some further articulation of a unifying theme or thread between these

---

motivations of the parties.  Further, "[a]lthough qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury.  See Johnson v. Jones, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (qualified immunity may turn on disputed issues of fact); Karnes v. Skrutski, 62 F.3d 485, 491 (3d Cir.1995) ('While the qualified immunity defense is frequently determined by courts as a matter of law, a jury should decide disputed factual issues relevant to that determination.').  Motive is a question of fact that must be decided by the jury, which has the opportunity to hear the explanations of both parties in the courtroom and observe their demeanor.  See Mitchell v. Forsyth, 472 U.S. 511, 529, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (improper intent is a pure question of fact); Walker v. Horn, 286 F.3d 705, 710 (3d Cir.2002)."  Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir.2006).  See also, Bartos v. Pennsylvania, Dep't of Envtl. Prot., No. 1:08 CV 0366, 2011 WL 2456613, at *23 (M.D. Pa. May 25, 2011) report and recommendation adopted sub nom. Bartos v. Pennsylvania, No. 1:08 CV 366, 2011 WL 2415388 (M.D. Pa. June 16, 2011).  Therefore, resolution of these claims which focus on questions of human motivation, in our view, must await further factual development of the evidence concerning the motives of the defendants, matters that cannot be addressed at this time through a dispositive motion.

claims, the joinder of these plainly divergent claims in a single lawsuit is inappropriate under Rule 20 of the Federal Rules of Civil Procedure, the rule governing joinder of defendants in federal litigation, which provides, in part, that:

> Person[s] ... may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.
>
> Fed. R.Civ. P., Rule 20(a)(2).

In this case, it cannot be said from the amended complaint that these remaining allegations arise out of the same transaction, occurrence or series of transactions or occurrences. Quite the contrary, these episodes appear to be separate transactions, allegedly committed by different actors at divergent times and places. "[G]iven the hodgepodge of claims raised in the ... complaint," Boretsky v. Governor of New Jersey, 433 F. App'x 73, 77 (3d Cir. 2011), this Court may properly, in the exercise of its discretion, dismiss this amended complaint, and require Johnson to file separate complaints relating to what seem to be factually distinct claims. Id. In order to add clarity to these claims we recommend that the Court exercise its discretion by following this course, and dismissing the remaining. and apparently misjoined, claims in Johnson's amended complaint without prejudice to Johnson filing separate

complaints relating to what seem to be factually distinct claims.  See <u>Johnson v. Chambers</u>, No. 1:11 CV 831, 2012 WL 398335, at *16 (M.D. Pa. Jan. 20, 2012) <u>report and recommendation adopted</u>, No. 1:11 CV 831, 2012 WL 398309 (M.D. Pa. Feb. 7, 2012) <u>aff'd</u>, 487 F. App'x 693 (3d Cir. 2012).

### III.  <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' Motion to Dismiss, or in the Alternative for Summary Judgment (Doc. 23.), be GRANTED in part, and DENIED in part, as follows:

1.   All mail handling claims leveled by Johnson against Warden Holt, Associate Warden Dunbar, Inmate Systems Managers Farley and Trentley, along with Correctional Officers Mazza, Bushinski, Kalogna, Potter, Bond, and Beck, should be DISMISSED since Johnson failed to exhaust his administrative remedies with respect to those claims.

2.   All Fourth Amendment claims against defendants Sample, Gubbiotti, Kabonic and Bugerhoffer relating to prison officials' actions in taking a DNA sample from Johnson should be DISMISSED.

3.   All <u>Bivens</u> claims against a Public Health Service Officer, defendant Vander Hey Wright should be DISMISSED.

4.    All *repsondeat superior* supervisory liability claims, and supervisory liability claims arising out of the alleged failure to favorably address the plaintiff's prison grievance should be DISMISSED.

5.    All claims against defendant Straesser should be DISMISSED.

6.    All equal protection claims lodged by Johnson should be DISMISSED.

7.    All Eighth Amendment medical deliberate indifference claims lodged against non-medical correctional staff should be DISMISSED.

We further recommend that the following claims be permitted to proceed forward at this time:

1.    We recommend that the Court DENY the motion to dismiss Johnson's access to courts and retaliation claims, since there are disputed factual issues which need to be further developed before these claims could be resolved.

2.    It is recommended that the Court also DENY the motion to dismiss Johnson's medical deliberate indifference claim against the following Bureau of Prisons medical staff defendants, defendants Sullivan, Tuttle, Buggerhoff, and Kabonic.

3.    The motion to dismiss Johnson's Eighth Amendment claims against prison food service staff should be DENIED with respect to defendants

Durkins and China, but GRANTED as to the remaining corrections defendants, without prejudice to Johnson filing an amended complaint which clearly articulates facts linking these defendants to the knowing service of tainted food to inmates.

Finally, if these recommendations are adopted, the remaining claims in this litigation would involve disparate acts by different defendants which are not legally, logically, topically or temporally related to one another. Therefore, IT IS RECOMMENDED that these disparate claims, which are improperly joined in a single lawsuit should be dismissed without prejudice and with instructions that Johnson should bring these separate claims as separate lawsuits rather than aggregating these unrelated claims together in a single lawsuit.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where

required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 20th day of November, 2014.

<u>**_S/Martin C.  Carlson_**</u>
Martin C. Carlson
United States Magistrate Judge